ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL VII

| | | |
|---|---|---|
| COMISIÓN INSTITUCIONES FINANCIERAS y ESTADO LIBRE ASOCIADO DE PUERTO RICO<br><br>Peticionaria<br><br>v.<br><br>SANDRA LYNETTE CORTÉS RODRÍGUEZ, como Albacea de la Sucesión Aida R. Rodríguez Velázquez y Otros<br><br>Recurrida | KLCE202401278 | *Apelación*<br>procedente del Tribunal de Primera Instancia, Sala Superior de San Juan<br><br>Caso Núm.:<br>SJ2024CV05049<br><br>Sobre:<br>Reclamación de Cuenta Inactiva |

Panel integrado por su presidenta, la Juez Domínguez Irizarry, el Juez Ronda Del Toro y el Juez Pérez Ocasio

**Ronda Del Toro, Juez Ponente**

## RESOLUCIÓN

En San Juan, Puerto Rico, a 27 de enero de 2025.

Comparece ante nos la Oficina del Comisionado de Instituciones Financieras (en adelante, OCIF), mediante recurso de *"Certiorari"*, presentado el 22 de noviembre de 2024. La OCIF nos solicita que revoquemos la *Resolución* emitida el 15 de agosto de 2024, y notificada el 16 de agosto del mismo año, por el Tribunal de Primera Instancia, Sala Superior de San Juan (en adelante, TPI). Mediante dicha *Resolución*, el TPI declaró *No Ha Lugar* la solicitud de desestimación presentada por la OCIF el 26 de agosto de 2024.

Por los fundamentos que expondremos a continuación, *denegamos* el recurso ante nuestra consideración.

Número Identificador

RES2025 _____

**I.**

El 1 de agosto de 2018 falleció la señora Aida R. Rodríguez Velázquez (en adelante, causante), y dejó un testamento abierto, en el que nombró a su hija, Sandra Lynette Cortes Rodríguez, como albacea testamentaria de la sucesión (en adelante, albacea o parte recurrida). Tras su fallecimiento, la albacea inició las gestiones relacionadas con la herencia.

En específico, el 18 de noviembre de 2019, visitó el Banco Popular de Puerto Rico (en adelante, BPPR), donde la causante había creado la cuenta de ahorros objeto de controversia en el caso de epígrafe. Esta era una cuenta tipo *Ahorro A Toda Hora* (Núm. 423-084511), que la causante mantenía en común junto a su esposo fallecido, el señor Raúl González Marín. En el Banco, solicitó información de las cuentas de la causante, gestionó por escrito el reclamo de los fondos, e indagó cuáles eran los documentos requeridos por el Banco para recibir el dinero. Estos documentos consistían en una copia del testamento, de las cartas testamentarias y del relevo del Departamento de Hacienda. Así, con el objetivo de recibir los fondos de las cuentas, la albacea inició los trámites para recopilar los documentos mencionados, y una vez los recibió, procedió a entregarlos al Banco el 23 de abril de 2021.

Sin embargo, el 23 de diciembre de 2023, el Banco entregó a la parte recurrida los balances de todas las cuentas de la causante, excepto el de la cuenta de ahorros que nos concierne. Ante la insistencia de la albacea, el BPPR le notificó que, el 10 de diciembre de 2020, había entregado los fondos de dicha cuenta a la OCIF, tras determinar que era una cantidad no reclamada. No obstante, hasta ese momento, el BPPR no había notificado por escrito a la albacea sobre esta transferencia, ni advertido de sus

consecuencias. La albacea tampoco recibió notificación de la OCIF cuando recibió el dinero del Banco.

Así las cosas, el 3 de mayo de 2024, la albacea presentó una *Solicitud de Investigación sobre Dinero y otros Bienes Líquidos Abandonados o No Reclamados* en la OCIF, peticionando los fondos consignados ante dicha agencia. No obstante, la OCIF denegó la reclamación, mediante *Resolución* emitida el 6 de mayo de 2024, y notificada el 9 de mayo siguiente. En específico, la OCIF sostuvo que carecía de la facultad para reintegrar los fondos a la parte recurrida porque la reclamación había sido realizada luego del término de tres (3) años concedido para esos fines.

Inconforme, el 4 de junio de 2024, la parte recurrida presentó una demanda sobre reclamación de cuenta inactiva en el TPI. En esta, alegó que la causante mantenía una cuenta de ahorros en BPPR, junto al señor Raúl González Marín, cuyo número era 423-084511. Indicó que ambos titulares de la cuenta habían fallecido. Además, expuso que visitó al BPPR un año y un mes antes de que el BPPR transfiriera a la OCIF los fondos de la cuenta que nos concierne, con el propósito de solicitar la información de las cuentas de la causante y hacer el reclamo de los fondos. En el pliego, sostuvo que la cuenta objeto de controversia fue incluida en la *Planilla de Caudal Relicto* de la causante, presentada ante el Departamento de Hacienda. Por tanto, solicitó que se dejara sin efecto lo resuelto por la OCIF, que se determinara que los fondos reclamados no fueron abandonados, y que se devolvieran los fondos a la sucesión.

Tras varios incidentes procesales, el 10 de julio de 2024, la OCIF presentó una *Comparecencia Especial: Solicitud de Desestimación*. En esta, señaló que la parte recurrida no incluyó al BPPR como parte demandada, a pesar de que esta era una parte

indispensable por ser la institución financiera en la que se encontraba la cuenta de ahorro en cuestión. Informó que el BPPR rindió el *Informe Inicial sobre Cantidades No Reclamadas al 30 de junio de 2020* ante la OCIF, y a tenor con lo dispuesto en la Sección 37(b) de la Ley Núm. 55-1933, presentó la certificación de los *Avisos sobre Cantidades No Reclamadas* en la División de Cuentas Inactivas de la OCIF. En lo pertinente, indicó que el primer aviso fue publicado en el periódico "El Nuevo Día" el 25 de agosto de 2020, y el último fue publicado en el mismo periódico el 21 de septiembre de 2020. Además, planteó que, a pesar que la OCIF recibió el mencionado informe el 10 de diciembre de 2020, la parte recurrida presentó su solicitud a la OCIF el 3 de mayo de 2024. A saber, sostuvo que el periodo para realizar cualquier reclamación sobre la cuenta antes mencionada vencía el 11 de diciembre de 2023. A su vez, arguyó que correspondía al BPPR, y no a la OCIF, informar y notificar las cantidades no reclamadas, al amparo de la Ley Núm. 55-1933. En adición a ello, la OCIF planteó en su solicitud de desestimación que su División de Cuentas Inactivas había gestionado la entrega de los fondos para que se realizaran los trámites correspondientes para su depósito en la cuenta del Secretario de Hacienda. Por tanto, solicitó al TPI que desestimara la causa de acción en su totalidad por dejar de acumular a una parte indispensable, porque el término para reclamar había prescrito, y por dejar de exponer una reclamación que ameritara la concesión de un remedio.

Por su parte, el 29 de julio de 2024, la parte recurrida presentó una *Moción en Oposición a Solicitud de Desestimación*. Sostuvo que, el 18 de noviembre de 2019, había presentado una solicitud de certificación de relaciones bancarias de clientes fallecidos en el BPPR. Adujo que, a esa fecha, al iniciar las

gestiones de reclamos ante el BPPR, la cuenta dejó de ser una cuenta no reclamada, según lo dispuesto en la Ley Núm. 55-1933. A su vez, arguyó que, antes de transferir los fondos a la OCIF, el BPPR tenía que notificar, mediante publicación de edicto, los nombres y las cuentas de los fondos que iba a transferir a la OCIF. Además, planteó que no dejó de incluir en su *Demanda* a una parte indispensable, debido a que la Ley Núm. 55-1933 dispone que, una vez transferidos los fondos, no se sostendrá una acción en contra del Banco.

Así las cosas, el 15 de agosto de 2024, el TPI dictó *Resolución* en la que declaró *No Ha Lugar* la *Solicitud de Desestimación* presentada por la OCIF. En esta, sostuvo que, conforme la Regla 10.2(5) de las Reglas de Procedimiento Civil, la OCIF no probó que la parte recurrida no tenía un remedio en derecho. Además, resolvió que, conforme la Ley Núm. 55-1933, el BPPR no era parte indispensable desde el momento en que entregó el dinero a la OCIF.

Inconforme, y tras denegada una previa solicitud de reconsideración, el 22 de noviembre de 2024, la Peticionaria compareció ante nos mediante el presente recurso. En el mismo expuso el siguiente señalamiento de error:

> Erró el Tribunal de Primera Instancia al no desestimar la Demanda al amparo de la Regla 10.2(5) de Procedimiento Civil, por la reclamación encontrarse prescrita conforme la Sección 37 (g) de la Ley Núm. 55-1933.

La parte recurrida presentó su alegato. Con el beneficio de los escritos de ambas partes, resolvemos.

## II.

El auto de *Certiorari* constituye un vehículo procesal discrecional que permite a un tribunal de mayor jerarquía revisar las determinaciones de un tribunal inferior. <u>McNeil Healthcare v.</u>

Mun. Las Piedras I, 206 DPR 391, 403 (2021); 800 Ponce de León v. AIG, 205 DPR 163, 174 (2020); IG Builders et al. v. BBVAPR, 185 DPR 307, 337-338 (2012); Pueblo v. Díaz de León, 176 DPR 913, 917 (2009); García v. Padró, 165 DPR 324, 334 (2005).  La característica distintiva de este recurso se asienta en la discreción encomendada al tribunal revisor para autorizar su expedición y adjudicar sus méritos. IG Builders et al. v. BBVAPR, *supra*.

Con el fin de que podamos ejercer de una manera sabia y prudente nuestra facultad discrecional de entender o no en los méritos de los asuntos que son planteados mediante el auto de *Certiorari*, nuestros oficios se encuentran enmarcados en el Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B que en su Regla 40 señala los criterios que debemos tomar en consideración al atender una solicitud de expedición de un auto de esta naturaleza. Torres Martínez v. Torres Ghigliotty, 175 DPR 83, 97 (2008).  La referida regla dispone que son los siguientes:

A. Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.

B. Si la situación de hechos planteada es la más indicada para el análisis del problema.

C. Si ha mediado prejuicio, parcialidad, o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.

D. Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.

E. Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.

F. Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.

G. Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

En nuestro ordenamiento jurídico impera la norma de que un tribunal apelativo sólo intervendrá con las determinaciones interlocutorias discrecionales procesales del tribunal sentenciador cuando este último haya incurrido en arbitrariedad o en un craso abuso de discreción. García v. Asociación, 165 DPR 311, 322 (2005); Meléndez Vega v. Caribbean Intl. News, 151 DPR 649, 664 (2000). La discreción, a su vez, está caracterizada por la facultad para decidir distintas formas, esto es, para escoger entre uno o varios cursos de acción. García v. Asociación, *supra*. No obstante, debemos recordar que el ejercicio adecuado de la discreción judicial está inexorable e indefectiblemente atado al concepto de la razonabilidad. Pueblo v. Ortega Santiago, 125 DPR 203, 211 (2001).

## III.

En su señalamiento de error, la OCIF alega que erró el Tribunal de Primera Instancia al no desestimar la demanda de epígrafe, al amparo de la Regla 10.2(5) de Procedimiento Civil. En específico, sostiene que la reclamación se encuentra prescrita, conforme la Sección 37 (g) de la Ley Núm. 55-1933, por lo que quedó probado que la Recurrida no tiene derecho a la concesión de un remedio.

Conforme el derecho aplicable, no encontramos razón por la que debamos intervenir en el presente caso. No se configura ninguna de las instancias contempladas en la Regla 52.1 de

Procedimiento Civil, *supra,* y a la luz de los criterios establecidos en la Regla 40 de este tribunal, *supra,* que debemos evaluar, no encontramos justificación para intervenir.

La determinación recurrida constituye una decisión dentro del claro ejercicio de discreción conferido a los tribunales de primera instancia y de su facultad de manejar los casos de la manera que entiendan más adecuada, conforme las normas de derecho aplicables y los hechos ante su consideración.

Además, no se demostró que el TPI no actuó de forma arbitraria o caprichosa, ni se equivocó en la interpretación o aplicación de las normas procesales o de derecho al ejercer su poder discrecional de tomar las medidas protectoras que entendió necesarias, por lo que no se justifica nuestra intervención en este caso.

## IV.

Por los fundamentos antes expuestos, denegamos la expedición del auto de *certiorari.*

Lo acordó y manda el Tribunal, y certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones